UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDER GATER,

    Plaintiff,

v.                                          Case No: 8:15-cv-2058-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Linder Gater, seeks judicial review of the denial of her claim for supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

**A.    Procedural Background**

Plaintiff filed an application for supplemental security income in July 2011. (Tr. 168–173.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 96–102, 110–14.) Plaintiff then requested an administrative hearing. (Tr. 115–17.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 26–62.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claim for benefits. (Tr. 8–24.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–7.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1963, claimed disability beginning on April 1, 2007.  (Tr. 168.) Plaintiff's past relevant work experience included work as a food packer and hotel/motel housekeeper.  (Tr. 19, 57.)  Plaintiff alleged disability due to scoliosis, a vision problem, a back problem, and a "LET" problem.  (Tr. 204.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since July 29, 2011, the application date.  (Tr. 13.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, lumbago, bipolar disorder, and posttraumatic stress disorder.  (Tr. 13.)  The ALJ found Plaintiff's impairments of respiratory symptoms, skin lesions (dermatophytosis), and visual disturbances non-severe.  (Tr. 13–14.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14–15.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, such that Plaintiff can: occasionally lift, carry, push, or pull twenty pounds; frequently lift, carry, push, or pull ten pounds; stand and/or walk for about six hours out of an eight-hour workday; occasionally climb, crouch, and crawl; understand, remember, and carry out detailed, but not complex, instructions; interact appropriately with co-workers, supervisors, and the public; maintain attention and concentration for two hours at a time; and adapt to routine changes in the workplace. (Tr. 15.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged,

Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 16, 18.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a food packer and hotel/motel housekeeper. (Tr. 19.) Accordingly, the ALJ found Plaintiff not disabled. (Tr. 19–20.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past

relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred by relying on the VE's mischaracterization of Plaintiff's past relevant work as a food packer; and (2) the ALJ's RFC assessment failed to account for Plaintiff's limitations with walking and standing and interacting with co-workers, supervisors, and the public. For the reasons that follow, these contentions do not warrant reversal.

**A.    Plaintiff's Past Relevant Work**

As her first issue on appeal, Plaintiff challenges the ALJ's finding at step four of the sequential process. Plaintiff argues that the VE's characterization of one of Plaintiff's past jobs as a "food packer" did not accurately capture the work that Plaintiff testified she performed at Singleton Fisheries. (Dkt. 20 at 8–9.) Thus, the ALJ erred, Plaintiff argues, by relying on the VE's testimony to support his finding that Plaintiff could perform her past relevant work as a food packer.

At the hearing, Plaintiff testified that she worked at Singleton Fisheries, where she stood "on [her] feet, using [her] same hand all the time." (Tr. 34.) Plaintiff testified that this work was a bit like assembly line work, and that Plaintiff packed shrimp and seafood into boxes ranging from five to twenty pounds. (Tr. 34–35.) At times, Plaintiff testified, she operated the conveyer belt. (Tr. 35.) Plaintiff testified that this work required her to be on her feet at all times. (Tr. 36.)

The VE classified this work, under the Dictionary of Occupational Titles ("DOT") 319.484-010, as a "food packer," which is light work with a specific vocational preparation ("SPV") of 3. (Tr. 19, 57.) The VE testified that Plaintiff was capable of performing this past work as a food packer, given her RFC. (Tr. 57–58.) The VE testified that Plaintiff was also capable of performing her other past relevant work as a housekeeper. (Tr. 57–58.) The ALJ

adopted the VE's testimony, and thus found Plaintiff capable of performing her past relevant work as a food packer and a hotel/motel housekeeper. (Tr. 19.)

Plaintiff argues that the type of work Plaintiff testified she performed does not match the definition of a "food packer" under the DOT. (Dkt. 20 at 8.) DOT 319.484-010 describes a "food assembler, kitchen (hotel & rest.)" as follows:

> Prepares meal trays in commissary kitchen for inflight service of airlines, multiunit restaurant chains, industrial caterers, or educational, and similar institutions, performing any combination of following duties: . . . Fills individual serving cartons with portions of various foods and condiments, such as cream, jams, and sauces, by hand or using automatic filling machine.

United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed.1991). Plaintiff argues that the work she performed at Singleton Fisheries is more appropriately classified as an agricultural produce packer, DOT 920.687-134, a medium and unskilled job with an SVP of 2, or a laborer, shellfish processing, DOT 529.687-230, a heavy and unskilled job with an SVP of 3. (Dkt. 20 at 8.) An agricultural produce packer is described as follows: "[p]acks agricultural produce, such as bulbs, fruits, nuts, eggs, and vegetables, for storage or shipment," including, in relevant part, "[p]lac[ing] rows of produce in layers in containers, and insert[ing] excelsior, shredded cellophane, or paper trays after each layer and over top layer of produce, or scoop[ing] produce into container." DOT 920.687-134. A laborer, shellfish processing, is described as follows: "[p]erforms any combination of following tasks concerned with fresh packing, canning, freezing, or smoking shellfish," including, in relevant part, "[l]oad[ing] conveyors, hoppers, or handtrucks with product, cans, or cases," "[p]ack[ing] shellfish meat in jars, cans, or boxes, and packs containers in crushed ice to fresh pack." DOT 529.687-230.

Plaintiff argues that the ALJ's "reliance on this flawed testimony is significant [ ] for the reasonable doubt it casts upon the entirety of the [VE's] testimony and whether it should be relied upon as the substantive evidence necessary for a finding." (Dkt. 20 at 8.) Further, Plaintiff argues,

had the VE properly classified Plaintiff's past work at Singleton Fisheries, Plaintiff would have been incapable of performing the more demanding positions of agricultural produce packer or laborer, shellfish processing, given the ALJ's RFC finding. (Dkt. 20 at 8–9.)

In response, Defendant argues that Plaintiff's contention fails because, regardless of the ALJ's determination about Plaintiff's past work at Singleton Fisheries, "in addition to the food packer job, the ALJ also found Plaintiff could perform her past work as a hotel housekeeper," the correctness of which, importantly, Plaintiff does not challenge on appeal. (Dkt. 21 at 6.) Thus, Defendant argues, because the ALJ determined that Plaintiff is capable performing her past relevant work as a hotel housekeeper, which Plaintiff does not challenge on appeal, there is substantial evidence supporting the ALJ's determination at step four of the sequential process. (Dkt. 21 at 6–7.)

Defendant is correct. Regardless of the ALJ's findings about Plaintiff's past work at Singleton Fisheries, the ALJ found, based on the testimony of the VE, Plaintiff capable of performing her past work as a housekeeper. (Tr. 19.) Plaintiff does not argue that this was error. *See Hernandez v. Comm'r Soc. Sec.*, 433 F. App'x 821, 823 (11th Cir. 2011) (finding that claimant abandoned any challenge to the ALJ's finding that claimant "was capable of performing light work," because claimant did not raise it on appeal); *Scott v. Comm'r Soc. Sec.*, 440 F. App'x 726, 728 (11th Cir. 2011) (finding that claimant waived any argument that she was unable to perform past work because she did not argue this on appeal). Therefore, because Plaintiff was capable of performing her past relevant work as a housekeeper, Plaintiff was not disabled. 20 C.F.R. § 404.1520(a)(iv), (f). Accordingly, Plaintiff's first contention on appeal does not warrant reversal.

**B.      Plaintiff's RFC**

As her second argument on appeal, Plaintiff argues that the ALJ misconstrued and did not properly evaluate the evidence regarding (1) Plaintiff's ability to stand and/or walk, and (2) Plaintiff's ability to interact with co-workers, supervisors, and the public.  (Dkt. 20 at 9–12.)

As to Plaintiff's ability to stand and walk, Plaintiff argues that the ALJ "downplayed the debilitating effects of the Plaintiff's plantar fasciitis." (Dkt. 20 at 9.)  Plaintiff argues that because the ALJ misconstrued this medical evidence, the ALJ did not credit Plaintiff's testimony regarding her pain and limitations in standing and walking.  (Dkt. 20 at 10.)  This is material, Plaintiff argues, because "[a] finding of standing and/or walking limitations could reasonably have changed the determination that the Plaintiff could return to past work (and thus require a fifth step evaluation) or, more likely, lead to a finding that the Plaintiff would be capable of no more than sedentary work and a finding of disability at the fifth step of the sequential evaluation."  (Dkt. 20 at 9.)  In response, Defendant contends that the ALJ properly discredited Plaintiff's testimony regarding her standing and walking limitations, the ALJ's findings are supported by substantial evidence, and Plaintiff has cited no record evidence to undermine the ALJ's findings.  (Dkt. 21 at 16.)

A claimant's testimony regarding pain or other symptoms, if supported by the medical evidence, is "itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following test: first, whether there is evidence of an underlying medical condition and, second, whether there is objective medical evidence substantiating the severity of the pain from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged.  *Id.*; *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(2); *Klawinski*, 391 F. App'x at 777. In addition to objective medical evidence, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *Klawinski*, 391 F. App'x at 777 (finding the ALJ's discounting claimant's subjective pain testimony supported by medical evidence and evidence of claimant's daily activities and the side effects of her medications).

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). "Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, on review, "[t]he question is not . . . whether ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r*

*Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's pain testimony because the testimony was inconsistent with claimant's testimony regarding his daily activities and with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (reversing the district court's reversal of the ALJ's decision because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony).

Thus, the first issue raised by Plaintiff is whether the ALJ adequately articulated his reasons for discrediting Plaintiff's testimony regarding her standing and walking limitations, and whether his determination was supported by substantial evidence. Plaintiff testified that she can walk for about ten to fifteen minutes before needing to sit due to her back pain. (Tr. 42.) The ALJ, however, concluded that although Plaintiff's treatment records reflected her reports of pain and other limitations, her "treatment records appear to involve largely routine complaints involving vague pain and discomfort," and "revealed no significant abnormalities." (Tr. 18.) Further, the ALJ reasoned that Plaintiff's complaints of musculoskeletal symptoms were not supported by treatment records showing that Plaintiff's gait, stance, and balance were normal. (Tr. 18.)

In support of this decision, the ALJ first cited January 2013 treatment notes from Plaintiff's treating physician Dr. Stanley Kaplan, who treated Plaintiff's plantar fasciitis. (Tr. 17.) The ALJ stated that, in these treatment notes, Plaintiff "reported significant improvement in her symptoms" caused by her plantar fasciitis. (Tr. 17.) Upon review of the record, in January 2013, Plaintiff was treated by Dr. Kaplan for her plantar fasciitis, reporting pain in her right heel. (Tr. 302.) Dr. Kaplan treated Plaintiff with an injection in her right heel. (Tr. 302.) In treatments notes from a follow-up appointment in February 2013, Dr. Kaplan stated that Plaintiff reported "mild

improvement" from the injection.  (Tr. 301.)  Plaintiff is therefore correct that the ALJ mischaracterized Dr. Kaplan's notes by stating that Plaintiff reported "significant" improvement when his notes stated "mild" improvement.  (Dkt. 20 at 9.)  However, at the hearing, Plaintiff testified that Dr. Kaplan's treatment "helped out a lot" and provided "[a] lot of relief," although she clarified that the relief was limited to a couple weeks after each injection.  (Tr. 54, 56.)

Next, the ALJ cited Plaintiff's 2012 treatment notes from Tampa Family Health Centers (Tr. 16–17), where Plaintiff was treated for complaints of an open wound and knee, back, and foot pain, and requested referrals for her "back and eyes" and for an optometrist.  (Tr. 270–87.)  In notes from June and July 2011 visits, Plaintiff's treatment provider found her balance, gait, and stance to be normal.  (Tr. 283, 286.)  The ALJ cited Plaintiff's 2013 treatment notes from Tampa Family Health Centers (Tr. 17), stating that the notes indicate that Plaintiff was diagnosed with plantar fasciitis and was referred to specialists, including Dr. Kaplan.  (Tr. 323.)  The ALJ noted that these examinations showed no significant abnormalities and Plaintiff was treated with medication and advised of changes she should make to her diet and exercise routines.  (Tr. 17, 319–26.)  Further, the ALJ cited the May 2012 physical assessment of consultative examiner Dr. Bhupendra Gupta.  (Tr. 291–94.)  Dr. Gupta noted that Plaintiff sits, stands, walks, and gets up and down from the examination table "with ease."  (Tr. 294.)  Dr. Gupta also noted that Plaintiff exhibited "[s]omewhat exaggerated pain behavior."  (Tr. 294.)  Finally, the ALJ noted that despite Plaintiff's testimony regarding her limitations, Plaintiff testified that she could tend to her personal care and complete household chores, including grocery shopping.  (Tr. 18, 46–47.)

The ALJ examined the appropriate evidence, including objective medical evidence, Plaintiff's treatment, and Plaintiff's daily activities, in discrediting her testimony regarding her standing and walking limitations, *see* 20 C.F.R. § 404.1529(c)(1)–(3), and adequately explained

his reasoning for his determination. And, upon review of the record, this decision was supported by substantial evidence. Therefore, the Court finds that the ALJ was not incorrect to discredit Plaintiff's testimony regarding her walking and standing limitations. *See Werner*, 421 F. App'x at 938–39.

Finally, Plaintiff argues that the ALJ's RFC finding that Plaintiff can interact appropriately with co-workers, supervisors, and the public (Tr. 15), fails to account for Plaintiff's testimony and the treatment notes of psychiatrist Dr. Suman Bhat regarding Plaintiff's anger. (Dkt. 20 at 11–12.) At the hearing, Plaintiff testified that she sometimes experiences anger, which is eased by her medications. (Tr. 38–40.) The ALJ acknowledged that although Plaintiff has documented mental illness, her treatment notes showed improvement of her symptoms with medication and her testimony and reports of her daily activities countered her testimony about the severity of her symptoms. (Tr. 18.) Further, the ALJ found that the record did not reflect any opinions finding that Plaintiff had restrictions with interacting with "peers or co-workers." (Tr. 19.) The ALJ discussed Dr. Bhat's 2013 evaluations of Plaintiff (Tr. 304–12), in which Plaintiff reported "mood swings" and "anger outbursts." (Tr. 17.) The ALJ found, however, that the progression of Dr. Bhat's records showed that Plaintiff experienced "significant improvement" and was treated with medication. (Tr. 17.)

Other than Dr. Bhat's treatment notes, Plaintiff cites no other evidence to support her contention that her social interactions should be more limited than the ALJ determined them to be in his RFC assessment. Upon review of the record, the ALJ's finding as to Plaintiff's ability to interact with others in a work setting was adequately articulated and supported by substantial evidence. As such, Plaintiff's second contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.    The decision of the Commissioner is **AFFIRMED**.

2.    The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 3, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record